UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSEPH C. METIVIER,

                Plaintiff,

v.                                            Case No.  5:02-cv-347-Oc-10GRJ

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

                Defendant.
_____/

## ORDER

Pending before the Court is the Application For Approval Of The Plaintiff's And Counsel's Contingency Fee Contract Which Provides For A Fee Of 25 Percent Of Plaintiff's Past Due Benefits And An Award Of Attorney's Fees Equal to 25 Percent of Plaintiff's Past Due Benefits Pursuant to 42 U.S.C. § 406(b)(1). (Doc. 25.) The Defendant has filed a Response and therefore the matter is ripe for review. (Doc. 26.)

### I. BACKGROUND

Pursuant to 42 U.S.C. § 406(b) counsel for Plaintiff requests approval of attorney's fees in the amount of $14,997.75 to be paid from Plaintiff's past due benefits currently being withheld by the Social Security Administration. The Defendant requests that the Court deny, in part, the request for attorney's fees and approve a fee for a

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

lesser amount that is in line with the amount of time and effort expended by counsel in this case.

This case was filed with the Court on November 21, 2002. On January 30, 2004, after the issues were briefed by the parties, the Court entered an order pursuant to sentence four of 42 U.S.C. § 405(g) reversing and remanding the case to the Social Security Administration for further proceedings.[2] Final Judgment was entered on February 2, 2004.[3] Subsequently, on May 19, 2004, the Court entered an order awarding attorney's fees to Plaintiff's counsel under the Equal Access to Justice Act ("EAJA") in the sum of $2,650, representing 17.35 hours of attorney time representing Plaintiff before this Court .[4]

After further administrative proceedings were conducted on December 3, 2004, an administrative law judge entered a decision favorable to the Plaintiff, and as a result, the Plaintiff was awarded $82,791.00 for past due benefits. The Commissioner held in escrow $20,558.25 of the award of past due benefits to secure payment of attorney's fees. Subsequently, on January 30, 2006 Plaintiff's counsel was paid $2,575.00 for representing the Plaintiff before the Social Security Administration. The Social Security Administration also paid the sum of $2,575.00 from the funds held in escrow to the attorney who represented the Plaintiff at the first administrative hearing before the Social Security Administration. Consequently, after payment of these sums the Social

---

[2] Doc. 18.

[3] Doc. 19.

[4] Doc. 23.

Security Administration continues to hold in escrow $15,397.75 of Plaintiff's past due benefits.

Plaintiff's counsel requests approval of a fee in the sum of $14,997.75 for services performed in this Court. In support of his request for approval of the fee, Plaintiff's counsel has filed: (1) a copy of a Social Security Fee Agreement, between the Plaintiff and Plaintiff's counsel, dated October 31, 2002,[5] (2) a copy of a Social Security Fee Agreement, dated June 28, 2004,[6] (3) a copy of a letter dated December 5, 2006 from the Social Security Administration, advising that $15,397.75 was still being held in escrow from the Plaintiff's past due benefits,[7] and (4) an unsigned form Fee Agreement - Civil.[8]

In addition to the attachments to the motion, the docket also includes the affidavit previously filed by counsel in support of his request for EAJA fees, which provides a

---

[5] Doc. 25, part 2.

[6] *Id.,* part 3. The Amended Social Security Fee Agreement provides in relevant part:

If benefits are paid pursuant to a favorable decision by the Social Security Administration after remand from Federal Court, the fee will be 25% of the past due benefits owed Client and his or her family by the Social Security Administration, up to $5,300.00, whichever is less for Attorney's work performed before the Social Security Administration. If 25% of past due benefits exceeds $5,300.00, the Attorney will petition the Federal Court to approve a fee for Attorney's Federal Court work. This fee is in addition to the fee paid by the Social Security Administration. The Federal Court fee will not exceed the difference between 25% of Client's past due benefits and the fee already awarded by the Social Security Administration.

[7] *Id.,* part 4.

[8] *Id.*, part 5.

detailed itemization of the 17.35 hours expended by Plaintiff's counsel in representing the Plaintiff in the proceedings before the Court.[9]

Counsel for Plaintiff represents that his normal hourly billing rate is $550.00 for noncontingent-fee cases. Using this hourly rate as a guide, Plaintiff's counsel asserts that the requested fee of $14,997.75 is well within the range of reasonableness because it represents only a 1.57 "multiplier" for the contingency risk factor.

The Commissioner, on the other hand, points out that the fee requested by Plaintiff's counsel would translate into a *de facto* hourly rate of $867.42 per hour for his services and that "approval of the entire fee requested in this case would result in a windfall given the amount of time spent on the case at the district court."[10]

## II. DISCUSSION

An attorney, as here, who successfully represents a Social Security claimant in court may be awarded as part of the judgment "a reasonable fee ... not in excess of 25 percent of the ... past-due benefits" awarded to the claimant.[11] The fee is payable "out of, and not in addition to, the amount of [the] past-due benefits."[12]

As required by *Gisbrecht v. Barnhardt*[13] - the Supreme Court's most recent pronouncement concerning the award of 406(b) fees - courts should approach contingent-fee determinations by first looking to the agreement between the attorney

---

[9] Doc. 21.

[10] Doc. 26.

[11] 42 U.S.C. § 406(b)(1)(A).

[12] *Id.*

[13] 535 U.S. 789, 808 (2002)

and the client, and then testing that agreement for reasonableness. "A contingent-fee agreement is not *per se* reasonable. Deference should be given, however, to the 'freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate ... and of an attorney's willingness to take the case despite the risk of nonpayment.'"[14] As such, when a court is called upon to assess the reasonableness of the award, a court should balance the interest in protecting claimants from inordinately large fees against the interest in ensuring that attorneys are adequately compensated so that they continue to represent clients in disability benefits cases.[15]

In making this reasonableness determination, the *Gisbrecht* court highlighted several important factors including: (1) whether the requested fee is out of line with the "character of the representation and the results the representation achieved;" (2) whether the attorney unreasonably delayed the proceedings in an attempt to increase the accumulation of benefits and thereby increase his own fee; and (3) whether "the benefits awarded are large in comparison to the amount of time counsel spent on the case,"the so-called "windfall" factor.[16] In these instances, a downward reduction may be in order.

While these factors may be straight forward, the application of these factors by federal trial courts has varied widely. Moreover, with relatively no guidance on the circuit level, the Court is left to divine the boundaries of reasonableness and where to draw the line between a "windfall" and a reasonable award. Therefore, a logical starting point in

---

[14] Joslyn v. Barnhart, 389 F.Supp.2d 454, 456 (W.D. N.Y. 2005).

[15] Gisbrecht at 805.

[16] *Id.* at 808.

the analysis is to look to the approaches taken by other district courts in determining whether a fee is reasonable or a windfall.

Fortunately, the court in *Ellick v. Barnhart*[17] already has done the heavy lifting by surveying all of the reported post-*Gisbrecht* decisions. In *Ellick* the Court divided the post-*Gisbrecht* decisions into three broad categories: (i) decisions awarding the full 25 percent of past due benefits,[18] (ii) decisions awarding the full amount requested, but less than 25 percent of past-due benefits,[19] and (iii) decisions reducing the fees.[20]

The common thread among the cases in which the court awarded the full 25 percent contingency fee is that in each case the court acknowledged the quality of counsel's representation which resulted in exceptional results, and for the most part, in those cases counsel for the claimants argued novel issues of fact or law or spent a substantial amount of time representing the claimant.

On the other hand, in those situations where courts have reduced the fees to less than 25 percent of the contingency fee requested, generally the benefits were large in relation to the amount of time counsel spent on the case or "[the] case [was] submitted

---

[17] 445 F.Supp.2d 1166 (C.D. Cal. 2006).

[18] *See* Whitehead v. Barnhart, 2006 WL 681168 (W.D. Tenn. 2006) (awarded *de facto* hourly rate of $982 considering counsel's quality representation and the novel, case-specific and risky arguments counsel made on behalf of claimant to obtain over $100,000); Joslyn v. Barnhart, 389 F.Supp.2d 454, 456 (W.D.N.Y.2005) (where the court approved an $810.61 *de facto* hourly rate where claimant was disabled for a 17-year period and counsel argued and proved that the ALJ was biased); Droke v. Barnhart, 2005 WL 2174397 (W.D.Tenn. 2005) (where the court awarded a *de facto* hourly rate of $830.82 in a case where counsel provided "exceptional results" including the award of ongoing benefits as well as past-due benefits); and Mudd v. Barnhart, 2003 WL 23654009 (W.D.Va.2003), *aff'd*, 418 F.3d 424 (4th Cir. 2005) (approving a *de facto* hourly rate of $736.84 where the court found that the attorney devoted substantial time and effort to the case).

[19] *See,* Ellick at 1170 nn. 10-11(cases collected therein).

[20] *See,* Ellick at 1171 nn. 12-16.

on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent."[21] In these cases the courts have taken into account the risk of representing claimants on a contingency fee but, nonetheless, have reduced the fees so that the award resulted in a multiplier of 2 - 2.5 times a normal hourly rate.[22]

Applying these lessons from the approaches taken by other courts in determining the boundaries of reasonableness, the Court turns to the level of novelty of this case, the efforts of Plaintiff's counsel and the results obtained.

The brief filed by Plaintiff's counsel is the logical place to look in examining these issues. Plaintiff's thirteen page brief in this case consists of mostly boilerplate language, half of which is simply a regurgitation of direct quotations from the record or the insertion of boilerplate legal precedent regarding improper application of the grids to non-exertional mental health problems. Notably, only one paragraph of the actual argument in the brief addresses the application of the grids to Plaintiff's specific impairments.[23] Thus, it is evident that the issues presented were neither novel nor complex and the skill and effort in presenting them to the Court were pedestrian at most.

Consequently, it is no surprise that counsel spent very little time on the case in comparison to the amount of benefits awarded to the Plaintiff. This is evidenced by the

---

[21] *See, e.g.* Ogle v. Barnhart, 2003 WL 22956419 * 5. (D.Me. 2003).

[22] *See, e.g.* Ogle v. Barnhart * 6 (holding that a multiplier of 2 is appropriate in light of indications that social security attorneys are only successful in approximately 50% of cases and without the multiplier the attorneys would not be adequately compensated for their risk); Van Nostrand v. Barnhart, 2005 WL 1168428 (W.D.Tex. 2005) (holding that a multiplier of 2.5 is appropriate to adequately capture the risks associated with contingent fees); and Ellick , 445 F.Supp.2d 1166 (holding that a multiplier of 2.5 times the normal hourly rates of counsel is a reasonable fee for contingency representation.)

[23] Doc. 12.

itemization of services rendered, described in counsel's affidavit, which documents that counsel only spent 6.45 hours preparing the brief and only spent 3.50 hours reviewing the administrative record. Notably, there are no time entries for conducting legal research, presumably because none of the issues in the case were novel or complex. The remaining time incurred by counsel was primarily devoted to document review, preparation of the EAJA application, and meeting with the claimant at the initial conference.[24]

While counsel is certainly entitled to be reasonably compensated for the contingent risk in representing disability claimants in federal court challenges to the decisions of the Commissioner, the Court concludes that a *de facto* hourly rate of $867.42 is inappropriate, as here, in a case where counsel spent a relatively small amount of time addressing issues that were neither novel nor complex.[25]

Accordingly, the Court concludes that a downward adjustment is appropriate in this case to arrive at a "reasonable fee for the services rendered." In determining the appropriate downward adjustment - while the Court recognizes that the traditional lodestar is not appropriate - nonetheless, the hours spent by counsel representing Plaintiff and counsel's "normal hourly billing rate for non-contingent-fee cases" may aid "the court's assessment of the reasonableness of the fee yielded by the fee agreement."[26] Therefore, in arriving at an appropriate downward adjustment - and ultimately arriving at a reasonable fee - it makes sense to consider the range of

---

[24] Doc. 21.

[25] *See,* Ellick at 1173.

[26] Gisbrecht at 808.

multipliers considered reasonable in other cases as measured against the recognized and customary hourly rate charged by attorneys in these types of cases and generally in other cases.

With regard to the range of multipliers found appropriate by other courts in straight forward cases, like this one, the Court concludes that considering the risk and complexity of this case, as a general proposition a multiplier representing 2.5 times the normal hourly rate of counsel would generally fall within the boundaries of a reasonable fee for the representation of a Plaintiff in this type of case.

However, the multiplier would be meaningless if applied against a fictional hourly rate as opposed to applying it to the hourly rates actually charged by attorneys for representing disability claimants and for representing clients in non-contingency fee cases.

Plaintiff's counsel claims that he charges (and presumably receives) an hourly rate of $550.00 per hour for representing clients in non-contingency cases. This rate, of course, is not applicable to disability claimants because due to the financial means of the claimants in these cases, the claimants never pay a straight hourly rate and most certainly these types of claimants have never paid an attorney $550.00 an hour to file a case in federal court. Moreover, although the Court recognizes that some attorneys in large national law firms charge hourly rates for senior partners in the range of $500-$600 per hour in complex cases, the Court is hard pressed to accept the representation that attorneys charge or receive an hourly rate of this magnitude in the Gainesville-Ocala legal community.

The only evidence offered by Plaintiff in support of his assertion that his normal hourly rate is $550.00 for non-contingent fee legal work is a copy of an unsigned, undated form civil fee agreement.[27] Accordingly, because Plaintiff's counsel has failed to convince the Court that $550.00 per hour is anything more than a fiction, it is inappropriate to use this hourly rate in assessing whether a 2.5 multiplier would result in a reasonable fee. Rather, the range of $225.00 per hour, as previously found by the Court in another case, is more in line with the rates charged by attorneys in this area.[28]

Therefore, taking into account the approaches utilized by other courts that have applied *Gisbrecht* - and in order to avoid the approval of a fee which would result in a windfall - the Court will reduce the attorney's fees requested by Plaintiff's counsel to $9,759.38, which represents the approval of a reasonable fee with a 2.5 multiplier of the reasonable hourly rate of $225.00 per hour.

### III. CONCLUSION

Accordingly, for the reasons discussed above, the Application For Approval Of The Plaintiff's And Counsel's Contingency Fee Contract Which Provides For A Fee Of 25 Percent Of Plaintiff's Past Due Benefits And An Award Of Attorney's Fees Equal to 25 Percent of Plaintiff's Past Due Benefits Pursuant to 42 U.S.C. § 406(b)(1) is due to be **GRANTED in part.** Section 406(b) fees are approved for Plaintiff's counsel in the amount of $9,759.38 to be paid out of the sums withheld by the Social Security Administration from the Plaintiff's remaining past due benefits. In addition, Counsel for

---

[27] Doc. 25, part 5.

[28] *See, Becraft v. Barnhart*, case no. 5:98-cv-302-Oc-GRJ (M.D. Fla. 2003)(Doc. 41.)

Plaintiff is directed to return to Plaintiff the EAJA fees that were previously awarded to counsel by this Court in the amount of $2,650.00.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on June 15, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel